UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT


No. 95-1249

CHAULK SERVICES, INC.,

Plaintiff - Appellant,

v.

MASSACHUSETTS COMMISSION AGAINST
DISCRIMINATION, ET AL.,

Defendants - Appellees.



APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Reginald C. Lindsay, U.S. District Judge] 



Before

Torruella, Chief Judge, 

Lynch, Circuit Judge, 

and Casellas,* District Judge. 



Arthur P. Menard, with whom Paul J. Murphy and Menard Murphy 
& Walsh were on brief for appellant. 
Macy Lee, Assistant Attorney General, with whom Scott 
Harshbarger, Attorney General of Massachusetts, was on brief for 
appellee Massachusetts Commission Against Discrimination;
Katherine McClure on brief for appellees Petrina 
Doulamis/Sullivan and International Association of EMTs &
Paramedics, NAGE and AFL-CIO.



November 27, 1995
 

* Of the District of Puerto Rico, sitting by designation.



-2-

CASELLAS, District Judge. Plaintiff-appellant Chaulk CASELLAS, District Judge. 

Services, Inc. ("Chaulk") originally brought this action for

declaratory judgment, preliminary and permanent injunctive relief

against the Massachusetts Commission Against Discrimination

("MCAD")("the Commission"), Petrina Doulamis/Sullivan

("Doulamis") and the International Association of EMTs &

Paramedics, NAGE, AFL-CIO ("the Union"), to prevent defendants-

appellees from proceeding with the case of Doulamis v. Chaulk 

Services, Inc., 93-BEM-2145, then pending before the MCAD, on the 

basis that the action was preempted by federal law, particularly,

the National Labor Relations Act ("NLRA")("the Act"), 29 U.S.C. 

151 et seq. The district court abstained from deciding Chaulk's 

preemption claim, citing Younger v. Harris, 401 U.S. 37 (1971), 

Ohio Civil Rights Commission v. Dayton Christian Schools, Inc., 

477 U.S. 619 (1986) and Brotherhood of Locomotive Engineers v. 

MCAD, 695 F. Supp. 1321 (D. Mass. 1988), and consequently 

dismissed Chaulk's complaint. We vacate the judgment below and

remand the case to the district court.

I. STATEMENT OF THE CASE I. STATEMENT OF THE CASE 

A. Facts A. Facts

In the middle of 1993, the International Association of

EMTs and Paramedics, NAGE, AFL-CIO, began a union organization

campaign at Chaulk. Doulamis became involved in the campaign

sometime during the fall of 1993, when she and Eric Burgess, a

male Chaulk employee, wrote a letter to the president of Chaulk's

parent company calling for the organization of a union. On

-2-

November 10, 1993, Chaulk's CEO Nicholas O'Neil and Joseph

Gilmore, vice-president, as part of their own campaign against

the union organization effort, met with Doulamis in an attempt to

pressure her into becoming a non-union advocate. Doulamis

declined their invitation.

As a result of this meeting, the Union filed unfair

labor practice charges on November 29, 1993 with the National

Labor Relations Board ("NLRB") against Chaulk, claiming that it

coerced and intimidated Doulamis, a known union organizer, by

questioning her regarding union activities and threatening

retaliation for those union activities, in violation of the Act.

On December 6 and 9, 1993, the Union filed two additional charges

with the NLRB, both of which alleged that Chaulk interfered with

Doulamis' labor activity rights and discriminated against her

because of her union organization efforts.1

Thereafter, the NLRB issued a complaint against Chaulk

alleging specific violations of 8(a)(1) and (3) of the NLRA,

and charging that Chaulk had interfered with, restrained and

coerced several employees, including Doulamis, in the exercise of

rights guaranteed by 7 of the Act. With respect to Doulamis,

the complaint alleged that on November 29, 1993 Chaulk issued a

 

1 The Union filed several additional unfair labor practice
charges against Chaulk stemming from its alleged interference
with the protected rights of numerous other employees. Here, we
refer in particular only to those which, according to the
parties, involve charges of unlawful conduct directed against
Doulamis. Furthermore, while Doulamis is not named as the
aggrieved employee in these charges, both parties agree that the
employee referred to therein is, in fact, Doulamis.

-3-

written warning and on December 7, 1993 issued a letter addressed

to Doulamis threatening her with discipline if she attended any

future 401(K) meetings held by Chaulk with its employees. In

addition, the complaint charged that on December 2, 1993, Chaulk

suspended the coauthor of the pro-union letter, Eric Burgess.

According to the complaint, Chaulk engaged in this conduct

because it mistakenly believed that Doulamis, together with

several of her fellow employees, had engaged in misconduct

arising out of union or other protected concerted activity. See 

Complaint and Notice of Hearing at s 7-8. It is also alleged

that these employees formed, joined and assisted the Union and

otherwise engaged in concerted activities, and that Chaulk's

conduct was a deliberate attempt to discourage the employees from

engaging in these activities, in violation of sections 8(a)(3)

and (1) of the Act. See Complaint and Notice of Hearing at s 7- 

10.

A full and comprehensive settlement agreement was

reached between Chaulk and the NLRB in March 1995 regarding these

claims. As part of the settlement, Chaulk agreed to, inter alia, 

expunge from its files any reference to the transfer of Eric

Burgess; the written warnings set forth in the complaints of

Doulamis, Richard Graham, Chris Adler, Gary Winitzer, Jim Taubert

and Jean Taubert; the suspensions of Eric Burgess, Chris Adler,

Jim Taubert, Jean Taubert, Gary Winitzer, Michael Cook, Kathryn

Edwards and James McLaughlin; and the terminations of Fran

Wilkerson, John Borden and McLaughlin. In addition, Chaulk

-4-

agreedto payout approximately$12,000in backpay tothese employees.

Meanwhile, on December 1, 1993, after the Union had

already filed its first charge with the NLRB, Doulamis filed a

complaint with the MCAD against Chaulk, claiming she had been a

victim of unlawful sex discrimination. Specifically, she

complained of being harassed about her union activity, allegedly

because of her gender, in that the "males who are also involved

[in the union activity] are not being harassed."

On February 18, 1994, Chaulk moved to dismiss Doulamis'

complaint at the MCAD for lack of jurisdiction, on the grounds

that it was preempted by federal law. On May 13, 1994, the MCAD

issued an order denying the motion to dismiss and retaining

jurisdiction over Doulamis' discrimination claims, reasoning that

it did not have to address the merits of the underlying labor

dispute in order to resolve the allegations of gender

discrimination. The Commission then promptly issued a set of

interrogatories to Chaulk, requesting detailed information about

all known union organizers, their role in organizing efforts and

any significant acts of union organizing known to appellant,

including copies of any communications between Chaulk and

Doulamis relative to the union organization effort.

B. Proceedings Below B. Proceedings Below

The present action was filed in the United States

District Court for the District of Massachusetts on December 8,

1994, seeking a declaratory judgment as well as an injunction

barring the continued prosecution of Doulamis' complaint before

-5-

the MCAD. Chaulk claimed that the Commission's assertion of

state authority over her charge directly threatened and

significantly interfered with the jurisdiction of the NLRB. As

noted above, the district court granted MCAD's motion to dismiss

on abstention grounds. It did not decide the preemption issue.

Chaulk now appeals the district court's judgment.

II. ANALYSIS II. ANALYSIS 

A.Preemption A.Preemption

Relying on the doctrine of preemption first enunciated

in San Diego Building Trades v. Garmon, 359 U.S. 236 (1959), 

appellant argues that the district court erred in allowing the

Commission's motion to dismiss on the grounds of Younger 

abstention and that it should have decided the preemption issue.

Citing primarily to Bud Antle, Inc. v. Barbosa, 35 F.3d 1355 (9th 

Cir. 1994), Chaulk asserts that when it is clear that the state

tribunal is acting beyond the lawful limits of its authority,

there is no principle of comity that is served by abstention.

Id. at 1356. Accordingly, it urges us to find the Younger 

abstention doctrine inapplicable to this case, address the merits

of its preemption claim, and declare that appellee's charge of

sex discrimination before the Commission is indeed preempted by

federal law.

We begin by delineating the present scope of the so

called Garmon preemption doctrine. The Supreme Court held in 

Garmon that when an activity is arguably subject to 7 or 8 of 

the National Labor Relations Act, the states as well as the

-6-

federal courts must defer to the exclusive competence of the NLRB

if the danger of state interference with national labor policy is

to be averted. Id. at 245. When Congress enacted the NLRA, it 

enacted comprehensive procedural rules and created the NLRB to

administer this specially designed regulatory structure. The

result was a complex and interrelated scheme of federal law,

remedies and administration designed to achieve uniformity in our

national labor policy. Garmon, 359 U.S. at 242; New York 

Telephone Co. v. New York Dept. of Labor, 440 U.S. 519, 527 

(1979); Jones v. Truck Drivers Local Union No. 299, 838 F.2d 856, 

872 (6th Cir. 1988)(Merritt, J., concurring in part and

dissenting in part).

In order to achieve the desired uniformity, Congress

entrusted the interpretation and enforcement of the NLRA to a

centralized administrative agency, armed with its own procedures,

and equipped with its specialized knowledge and cumulative

experience. See Garmon, 359 U.S. at 242. This administrative 

scheme was designed to avoid the danger of conflicting or

incompatible adjudications such as would inevitably result from

having multiple forums, with their diverse procedures, entertain

claims under the NLRA. Garner v. Teamsters, Chauffeurs and 

Helpers Local Union No. 776, 346 U.S. 485, 490-91 (1953). The 

Garmon rule is therefore intended to preclude state interference 

with the NLRB's interpretation and enforcement of the integrated

scheme of regulation established by the NLRA. Golden State 

Transit Corp. v. City of Los Angeles, 475 U.S. 608, 613 (1986). 

-7-

Withal, the Garmon rule admits of some exceptions to 

the NLRB's primary jurisdiction. For instance, where the conduct

at issue is of only "peripheral concern" to federal labor policy,

the states are not precluded from regulating the activity.

Garmon, 359 U.S. at 243. Similarly, state action is not 

preempted where the regulated conduct touches interests "so

deeply rooted in local feeling and responsibility that, in the

absence of compelling congressional direction, courts cannot

infer that Congress has deprived the states of the power to act."

Id.2 

When called to determine whether these exceptions

apply, courts must balance the state's interest in remedying the

effects of the challenged conduct against both the interference

with the NLRB's ability to adjudicate the controversy and the

risk that the state will approve conduct that the NLRA prohibits.

Belknap, Inc. v. Hale, 463 U.S. 491, 498-499 (1983); NLRB v. 

State of Ill. Dept. of Emp. Sec., 988 F.2d 735, 739 (7th Cir. 

1993). In doing so, we intentionally focus on the conduct at the

 

2 Courts have recognized a third exception to the Garmon 
doctrine where Congress has expressly carved out such an
exception to the NLRB's primary jurisdiction. See Tamburello v. 
Comm-Tract Corporation, No. 95-1295, slip op. at 6 (1st Cir. 
October 2, 1995) (citing Vaca v. Sipes, 386 U.S. 171, 179-80 
(1967); Brennan v. Chestnut, 973 F.2d 644, 646 (8th Cir. 1992)). 
Congress has not made an exception to the NLRB's primary
jurisdiction for claims alleging sex discrimination in the
context of an unfair labor practice. See Jones v. Truck Drivers 
Local Union, 838 F.2d at 861 (sexual discrimination is a breach 
of duty of fair representation and within scope of 8 of the
NLRA); NLRB v. Local 106, 520 F.2d 693 (6th Cir. 1975)(same). 
This exception therefore does not apply to the facts in this
case.

-8-

root of this controversy, namely Chaulk's alleged interference

with Doulamis' union activities, as opposed to the descriptive

title of sex discrimination given to her cause of action before

the MCAD. That is because preemption is designed to shield the

system from conflicting regulation of conduct. "It is the 

conduct being regulated, not the formal description of governing

legal standards that is the proper focus of concern."

Amalgamated Ass'n of St., E.R. & M. C. Emp. v. Lockridge, 403 

U.S. 274, 292 (1971). See also, Garmon, 359 U.S. at 246 ("It is 

not the label affixed to the cause of action under state law that

controls the determination of the relationship between state and

federal jurisdiction").

Doulamis' complaint highlights the risk that a state

cause of action will touch on an area of primary federal concern.

She complains of incidents of interference with her union

activities as a union organizer. The very same conduct provides

the factual basis for the unfair labor practice charges brought

by the Union on her behalf, which were eventually incorporated

into the complaint and notice of hearing issued by the NLRB. Her

claims are fundamentally grounded in an assertion that the rights

which her employer interfered with involve her union activity.

Where, as here, the case involves conduct arguably prohibited by

8 of the Act, the NLRB has broad authority to determine the

appropriate remedy for wronged employees.3 "In fact, since
 

3 MCAD presses the argument that gender-based discrimination is
not even within the realm of prohibited activities under the
NLRA. According to MCAD, the scope of prohibited discrimination

-9-

remedies form an ingredient of any integrated scheme of

regulation, to allow the state to grant a remedy here which has

been withheld from the NLRB only accentuates the danger of

conflict." Garmon, 359 U.S. at 247; Richardson v. Kruchko & 

Fries, 966 F.2d 153, 157 (4th Cir. 1992). Board authority over 

claims of interference with union activities is not merely of

peripheral concern to the Act. Rather, the Board's authority to

remedy such practices is central to its purpose. See Tamburello 

v. Comm-Tract Corporation, No. 95-1295, slip op. at 9 n.5 (1st 

Cir. October 2, 1995).

Moreover, the fact that the Union clearly considered

Chaulk's conduct an unfair labor practice, and that the Board

entertained such charges, only buttresses the Court's conclusion

that said conduct is not only "arguably", but obviously

prohibited under section 8(a) of the NLRA. It also highlights

the very real danger of interference with the NLRB's

jurisdiction, as it was precisely the Board's timely intervention

which in this case led to the agreement through which Chaulk

pledged, among other things, not to engage in the challenged

conduct, or take similar actions to hinder its employees in their

union activities.

Significantly, the Supreme Court has held that in cases
 

under the Act is limited to discrimination based on union
activities or membership. Still, the argument has been made
successfully that sexual discrimination constitutes an unfair
labor practice under 8 of the NLRA. See Jones v. Truck Drivers 
Local Union, 838 F.2d at 861 (sexual discrimination is a breach 
of duty of fair representation and within scope of 8 of the
NLRA); NLRB v. Local 106, 520 F.2d 693 (6th Cir. 1975)(same). 

-10-

where the underlying conduct is arguably prohibited by the NLRA,

application of the so-called "local interests" exception hinges,

in the first place, upon the existence of a significant state

interest in protecting its citizens from the challenged conduct.

In second place, the controversy which could be presented to the

state court must be different from that which could have been

presented to the NLRB. Sears, Roebuck & Co. v. San Diego County 

Dist. Council of Carpenters, 436 U.S. 180, 196-97 (1978). See 

also, Tamburello v. Comm-Tract Corporation, No. 95-1295, slip op. 

at 14 (1st Cir. October 2, 1995).

Under the Sears rationale, the critical inquiry is 

whether the controversy presented to the state court is identical

to or different from that which could have been presented to the

NLRB.4 Sears, 436 U.S. at 197. The Court reasoned that it is 

only in the former situation that a state's exercise of

jurisdiction necessarily involves a risk of interference with the

unfair labor practice jurisdiction of the Board which the Garmon 
 

4 We note that Sears is not entirely on point, as it differs 
from the instant case in at least one fundamental respect. In
that case, the Court was presented with a situation where the
party seeking relief in the state forum had no right to invoke
the Board's jurisdiction and the party that had the right to
invoke the Board's jurisdiction had failed to do so. The Court
expressed concern that in the circumstances of that case, Sears
may not have a chance for a hearing on its claims if state
jurisdiction were preempted without any assurance that the
dispute might eventually be brought before the NLRB. The Court
reasoned that preemption was justified only when an aggrieved
party has a reasonable opportunity either to invoke the Board's
jurisdiction himself or else to induce his adversary to do so.
Id. at 201. Here, of course, there is no such concern, as the 
Union filed the unfair labor practice charges with the NLRB even
before Doulamis filed her gender discrimination claims before the
Commission.

-11-

doctrine was designed to avoid. Id. We assume arguendo that the 

Commonwealth of Massachusetts has a significant interest in

protecting its citizens against sex discrimination in their

employment. Following the guidelines set forth by the Supreme

Court in Sears, we therefore examine whether the controversy 

before the state forum would indeed be the same as that which

could be brought before the NLRB. Id. 

In this regard, it is telling that the Union, upon

learning of Chaulk's alleged interference with Doulamis'

activities as a union organizer, promptly filed an unfair labor

practice charge on her behalf, claiming violations of 8 of the

Act--thereby clearly characterizing the controversy as a labor

dispute, subject to the NLRB's primary jurisdiction. For its

part, the NLRB received the Union's allegations regarding

Chaulk's conduct--the same conduct that would later form the

basis for Doulamis' discrimination claim before the MCAD--

investigated them, proceeded then to issue a Complaint and Notice

of Hearing, and eventually settled the matter. Plainly, this is

not a case where the NLRB declined to exercise its lawful

jurisdiction over a labor controversy, or where the NLRB's actual

exercise of jurisdiction remains a matter of speculation. On the

contrary, the Board in this case moved aggressively to acquire

such jurisdiction and bring the matter to a full and speedy

resolution.

Furthermore, even Doulamis' own pleadings before the

Commission couch her claims in terms of a labor dispute within

-12-

the NLRB's primary jurisdiction. Her complaint accuses Chaulk of

harassment "about [her] union activities." She also claims to

have been "intimidated by Mr. O'Neil about involvement in union

activity" and "accused of distracting the other employees with

union activity." As noted above, such conduct on the part of

Chaulk, if adequately established through competent evidence,

would constitute an undue interference with Doulamis' rights

under 7 of the NLRA and consequently a violation of 8(a)(1)

of the Act. The application of additional remedies to the

conduct here at issue only invites conflict. As the Supreme

Court stated in Garmon, "[t]he obligation to pay compensation can 

be, indeed is designed to be, a potent method of governing

conduct and controlling policy." Id. at 247. See Sears, Roebuck 

& Co., 436 U.S. at 193-94 ("[T]he pertinent inquiry is whether 

the two potentially conflicting statutes [are] brought to bear on

precisely the same conduct.") (citations omitted). As discussed

above, Doulamis' claim of sex discrimination is founded upon the

identical facts which provided the basis for the unfair labor

practices charge brought on her behalf by the Union.

Accordingly, under the Garmon rationale, her claim before the 

Commission is expressly preempted.

Moreover, as pointed out by Chaulk, the interrogatory

issued by the MCAD in the course of the investigation and

prosecution of Doulamis' case belies the Commission's assertion

that it need not delve into the labor aspects of the controversy

in order to dispose of her gender discrimination claims. Rather,

-13-

the interrogatory is further proof that issues of labor law

ordinarily considered to be within the NLRB's primary

jurisdiction are precisely the type of questions that lie at the

heart of this controversy.

Finally, in order to determine the merits of Doulamis'

claims of sex disrimination, the MCAD will have to decide whether

in fact Doulamis was engaged in protected union activity, and if

so, whether she was engaged in the same type of union activity as

the other union organizers. Such a finding requires that the

MCAD become embroiled in a factual and legal determination of

what constitutes union activity, a task which has been expressly

reserved to the jurisdiction of the NLRB. More importantly, if

the Commission were allowed to entertain Doulamis' claim of

sexual discrimination, there is the potential risk that it will

incorrectly apply the substantive rules governing labor

controversies laid out by Congress in the NLRA. It is precisely

this potential for incompatible or conflicting adjudications that

Congress sought to avoid by leaving these determinations in the

first instance to the NLRB.

In the end, no recharacterization of this claim can

obscure the fact that, at bottom, this is a classic example of an

unfair labor practice claim of the kind traditionally handled in

the first instance by the NLRB. Since the controversy before the

MCAD and that resolved by the NLRB are the same in a fundamental

respect, and the risk of interference with the Board's

jurisdiction is obvious and substantial, we hold that the MCAD

-14-

has no jurisdiction to entertain Doulamis' charge of sexual

discrimination based on her employer's alleged interference with

her union activities. International Union of Operating Engineers 

v. Jones, 460 U.S. 669, 674 (1983).5 

B.Abstention B.Abstention

We turn now to what is in essence the threshold issue

in this appeal-whether the district court erred in abstaining

under the Younger doctrine. In Younger v. Harris, 401 U.S. 37 

(1971), the Supreme Court held that a federal court should not

enjoin a pending state criminal proceeding except in the very

unusual situation that an injunction is necessary to prevent

great and immediate irreparable injury. Younger stands for the 

proposition that principles of comity require "a proper respect

for state functions, a recognition of the fact that the entire

country is made up of a Union of separate state governments, and

a continuance of the belief that the National Government will

fare best if the States are left free to perform their separate

functions in their separate ways." Id. at 44. The Court has 

since applied its reasoning in Younger to civil proceedings in 

 

5 The dissent devotes a considerable number of pages to the
issue of whether Title VII and the NLRA provide concurrent
remedies. The Supreme Court has made clear however, that when a
state proceeding is claimed to be preempted by the NLRA under
Garmon, the issue is a choice-of-forum rather than a choice-of- 
law question. See International Longshoremen's Association v. 
Davis, 476 U.S. 380, 391 (1986). As such, "it is a question 
whether the State or the Board has jurisdiction over the
dispute." Id. If--as here--there is preemption under Garmon, 
then state jurisdiction is extinguished. Id. See also, 
International Union of Operating Engineers v. Jones, 460 U.S. at 
680-81; Sears, 436 U.S. at 199 n.29; Garmon, 359 U.S. at 245. 

-15-

which important state interests are involved. See Huffman v. 

Pursue, Ltd., 420 U.S. 592 (1975); Juidice v. Vail, 430 U.S. 327 

(1977); Trainor v. Hern ndez, 431 U.S. 434 (1977). 

In Ohio Civil Rights Comm'n v. Dayton Christian 

Schools, 477 U.S. 619 (1986), the principles of comity first 

announced in Younger were made extensive to state administrative 

proceedings. As a result, where (1) vital state interests are

involved, (2) in an ongoing state judicial (or administrative)

proceeding, a federal court should abstain from exercising its

jurisdiction over a claim, (3) unless state law clearly bars the

interposition of the constitutional claims. See Middlesex County 

Ethics Comm. v. Garden State Bar Assn, 457 U.S. 423, 432 (1982); 

Moore v. Sims, 442 U.S. 415 (1979). "The pertinent inquiry is 

whether state proceedings afford an adequate opportunity to raise

the constitutional claims." Middlesex, supra. 

The dissent asserts that, rather than a principle of

discretionary deference, Younger abstention requires a district 

court to abstain whenever a case falls within the doctrine's

parameters. To the extent it relies on the Supreme Court's

decision in Colorado River Water Conservation District v. United 

States, 424 U.S. 800, 816 n.22 as support for this blanket rule, 

however, we respectfully differ. The cited passage on which the

dissent relies clearly refers to that category of cases where

federal jurisdiction has been invoked for the purpose of

restraining state criminal proceedings. And even for that 

category of cases, the Supreme Court makes clear that abstention

-16-

is only appropriate absent bad faith, harassment, or a patently

invalid state statute. Id. at 816. In fact, Colorado River 

strongly reaffirmed the basic principle that abstention from the

exercise of federal jurisdiction is the exception, not the rule:

The doctrine of abstention, under which a
district court may decline to exercise or 
postpone the exercise of its
jurisdiction, is an extraordinary and
narrow exception to the duty of a
district court to adjudicate a
controversy properly before it.
Abdication of the obligation to decide
cases can be justified under this
doctrine only in the exceptional
circumstances where the order to the
parties to repair to the state court
would clearly serve an important
countervailing interest. It was never a
doctrine of equity that a federal court
should exercise its judicial discretion 
to dismiss a suit merely because a State
court could entertain it."

Colorado River, 424 U.S. at 813-14 (emphasis supplied; citations 

omitted). See also, New Orleans Public Service, Inc. v. Council 

of the City of New Orleans, 491 U.S. 350, 359 (1989). 

The Commission argues that the case at bar fits

squarely within the principles of Younger abstention. We 

disagree. First, the procedural posture of this case differs

from that of the customary case where abstention is traditionally

applied. Ordinarily, federal courts abstain from the exercise of

jurisdiction over a particular controversy out of respect for an

ongoing state proceeding begun before the federal action. It is

thought that this procedural mechanism forestalls the friction

that can arise when the business of the two systems--state and

federal--overlaps. But the notion of comity, which to a great

-17-

extent underlies the Younger doctrine of abstention, must 

accommodate the legitimate interests of both the state and 

national governments. Younger, 401 U.S. at 44; Pennzoil Co. v. 

Texaco, Inc., 481 U.S. 1, 10 (1987). 

In abstaining, the court below seemingly focused on the

situation that existed on December 8, 1994, when Chaulk's

complaint for declaratory and injunctive relief was filed in the

United States District Court for the District of Massachusetts.

In doing so however, the court ignored the fact that an unfair

labor practice charge, based on the same facts underlying

Doulamis' complaint of sex discrimination, had been filed against

Chaulk prior to her discrimination claims and was pending before 

the NLRB at the time of the filing of her action before the

Commission. In addition, shortly after Doulamis filed her

action, additional charges were filed by the Union, and the Board

continued to exercise its jurisdiction over these claims.

Federal courts seek to avoid needless conflict with

state agencies and withhold relief by way of injunction where

state remedies are available and adequate. Alabama Public 

Service Commission v. Southern Railroad Co., 341 U.S. 341 (1951). 

But where Congress, acting within its constitutional authority,

has vested a federal agency with exclusive jurisdiction over a

subject matter and the intrusion of a state would result in a

conflict of functions, the federal court may enjoin the state

proceeding in order to preserve the federal right. American 

Federation of Labor v. Watson, 327 U.S. 582, 593-95 (1946); 

-18-

Bowles v. Willingham, 321 U.S. 503, 510-11 (1944); Public 

Utilities Commission of Ohio v. United Fuel Gas Co., 317 U.S. 

456, 468-70 (1943).

This case is similar to Freehold Cogeneration 

Associates, LP v. Board of Regulatory Commissioners of New 

Jersey, 44 F.3d 1178 (3d Cir. 1995). In that case, Freehold 

sought a declaratory judgment in the United States District Court

for the District of New Jersey that the Board of Regulatory

Commissioners of the State of New Jersey ("BRC") was preempted by

the Federal Public Utility Regulatory Policies Act ("PURPA") from

modifying the terms of a previously approved power purchase

agreement between Freehold and Jersey Central Power and Light

Company ("JCP&L"), a New Jersey public utility. Freehold also

sought an order enjoining the ongoing BRC proceedings. The

district court dismissed for lack of subject matter jurisdiction.

On appeal, one of the arguments raised by JCP&L was that the

federal court should abstain from resolving the merits of the

case even if it was found to possess subject matter jurisdiction.

The Third Circuit rejected the argument saying:

[O]ur concern is with carrying out a
federal statutory scheme promoting the
development of alternative energy
sources. The alleged intrusive action is
not by the federal government, but, on
the contrary, by a state regulatory
agency. We conclude that abstention is
not appropriate in this case and does not
warrant any extended discussion.

Freehold Cogeneration, 44 F.3d at 1187 n.6. As in Freehold, we 

are concerned here with carrying out a federal statutory scheme,

-19-

in this case one promoting the development of a uniform national

labor policy. The alleged intrusive action is not by the federal

government, but by the MCAD's purported regulation of conduct

within the NLRB's jurisdiction.

We note that in the particular context of this case,

the application of Younger abstention would result in significant 

prejudice to Chaulk, who entered into a comprehensive settlement

agreement with the NLRB through which all unfair labor practice

claims were resolved, subject to Chaulk's compliance with the

conditions set forth therein, only to be faced with the prospect

of having to defend its actions once again, this time before a

state forum. Such an expansive interpretation of the abstention

doctrine would have the effect of encouraging duplicative

litigation, with the resultant waste of judicial and

administrative resources, as well as the danger to federal-state

relations that could result from conflicting adjudications.

Under these circumstances, where a federal agency with

primary jurisdiction over the controversy has already exercised

said jurisdiction, it would be inconsistent with the above

mentioned principles of comity and equal respect for the

interests of both the federal and state government for a federal

court to abstain on Younger grounds from deciding a claim 

properly before it, in order to give way to a state

administrative action filed after the federal proceedings are 

underway. Put simply, comity works both ways. 

The Commission nevertheless urges us to extend the

-20-

application of Younger and its progeny to the circumstances of 

this case. To this end, MCAD argues that the facts before us

satisfy the relevant three part test set out by the Supreme Court

in Middlesex, 457 U.S. at 432. As it is however, even an 

analysis of the case within this framework leads us to the same

conclusion. Abstention was improper in this case. We explain.

A number of courts have held that Younger abstention is 

inappropriate where a claim of preemption is "facially

conclusive" or "readily apparent", because no significant state

interests are served when it is clear that the state tribunal is

acting beyond the lawful limits of its authority. Bud Antle, 

Inc. v. Barbosa, 35 F.3d 1355, 1365-66 (9th Cir. 1994), as 

amended by, 45 F.3d 1261, 1272-73 (9th Cir. 1994); Gartrell 

Construction, Inc. v. Aubry, 940 F.2d 437, 441 (9th Cir. 

1991)(citing Champion International Corp. v. Brown, 731 F.2d 1406 

(9th Cir. 1984); National R.R. Passenger Corp. v. Florida, 929 

F.2d 1532, 1537 n.12 (11th Cir. 1991)(citing Baggett v. 

Department of Professional Registration, 717 F.2d 521, 524 (11th 

Cir. 1983)); Southwestern Bell Tel. v. Ark. Public Service 

Commission, 824 F.2d 672, 673 (8th Cir. 1987); Kentucky W. Va. 

Gas Co. v. Pennsylvania Pub. Util. Comm'n, 791 F.2d 1111, 1115 

(3d Cir. 1986). Chaulk asserts that the Commission is patently

acting beyond its jurisdictional boundaries and therefore, no

principle of comity precluded the district court from

entertaining its claim of preemption on the merits. In response,

the Commission cites the Supreme Court's decision in New Orleans 

-21-

Public Service, Inc. v. Council of the City of New Orleans, 491 

U.S. 350 (1989) ("NOPSI") for the proposition that the mere

assertion of a substantial constitutional challenge to state

action, such as an argument of federal preemption engenders, will

not alone compel the exercise of federal jurisdiction. Whatever

the merits of MCAD's assertion however, even the NOPSI decision 

leaves open the possibility that a "facially conclusive" claim of

preemption might render abstention inappropriate. Id. at 367. 

Consequently, we examine the merits of Chaulk's contention that

abstention is also inappropriate because preemption is readily

apparent in this context.

We have explained above the particularities of

Doulamis' claims before the Commission. She complains of

incidents of interference with her union activities as a union 

organizer. We have observed that the very same conduct provides 

the factual basis for the unfair labor practice charges brought

by the Union on her behalf. We have also highlighted the fact

that the NLRB incorporated these charges into a complaint and

notice of hearing claiming violations to sections 8(a)(1) and

8(a)(3) of the NLRA. As we have noted, her claims are

fundamentally grounded in an assertion that the rights which her

employer interfered with involve her union activity. 

Under these circumstances, were we to allow Doulamis'

state claims to go forward by simply artfully pleading her claim

of unfair labor practices as one motivated by a discriminatory

animus because of her gender, we would be compromising the NLRB's

-22-

role as chief arbiter of labor disputes. Indeed, there are few

unfair labor practices which could not be similarly repackaged.

Similarly aggrieved individuals could use such an opening to

bypass the NLRB merely by ascribing a myriad of discriminatory

motives to the relevant conduct (i.e. age, race, religious

belief, etc.), thereby creating a system of labor dispute

adjudication parallel to the NLRB, leaving the state and federal

courts to grapple piecemeal with issues Congress intended

primarily for NLRB resolution.

Faced with this particular factual scenario, we find

that under the Garmon doctrine it is "readily apparent" that the 

Commission is acting beyond its jurisdictional authority by

entertaining Doulamis' complaint, for it is readily apparent that

Chaulk's conduct at issue is at least arguably prohibited by, and

thus subject to the NLRA. Accordingly, we hold that abstention

was inappropriate and that the district court abused its

discretion when it dismissed Chaulk's complaint on the basis of

Younger abstention. 

III. CONCLUSION III. CONCLUSION 

In sum, pursuant to the Garmon preemption doctrine, we 

find that Ms. Doulamis' claims are preempted by the NLRA, thereby

depriving the MCAD of jurisdiction to entertain her action based

on gender discrimination. In addition, we find that abstention

was inappropriate in this case, as the principles of comity and

of equal respect for state and federal functions weighed against

such an abdication of federal jurisdiction over the present

-23-

controversy. Accordingly, Chaulk is entitled to injunctive

relief, consistent with this opinion.

Finally, with regard to MCAD's argument that the

Eleventh Amendment bars Chaulk's claims against the Commission,

we point out that the Supreme Court has recognized that the

Eleventh Amendment does not preclude properly pleaded actions

against state officials when the relief sought is prospective and

equitable in nature. See Ex Parte Young, 209 U.S. 123 (1908); 

Will v. Michigan Department of State Police, 491 U.S. 58 (1989). 

We therefore reverse the judgment of the district court and

remand the case, so that Chaulk may address any pleading

deficiencies that currently preclude the continued prosecution of

its petition for relief.

Reversed and remanded. 

LYNCH, Circuit Judge, dissenting. Because Congress has LYNCH, Circuit Judge, dissenting. 

clearly expressed its intent to allow state anti-discrimination

statutes to operate in areas such as this that may overlap with

the National Labor Relations Act ("NLRA"), Petrina

Doulamis/Sullivan's action is not, I believe, preempted. Because

the federal courts are being asked to enjoin the Massachusetts

Commission Against Discrimination ("MCAD") from hearing an

ongoing gender discrimination action over which the state agency

plainly has jurisdiction, I believe that abstention is

appropriate. I respectfully dissent.

Under San Diego Building Trades Council, Millmen's 

Union, Local 2020 v. Garmon, 359 U.S. 236 (1959), and its 

-24-

progeny, and in light of the clear congressional mandate under

Title VII, 42 U.S.C.A. 2000e to e-17 (West 1994 & Supp. 1995),

that state anti-discrimination statutes have authority over

claims for discrimination coextensive with Title VII, Doulamis'

MCAD claim coexists with and is not displaced by the federal

labor laws. The employer's defense here presents no "facially

conclusive" claim for preemption. See New Orleans Public 

Service, Inc. v. Council of City of New Orleans, 491 U.S. 350, 

367 (1989). Garmon preemption is a question over which the state 

courts have concurrent jurisdiction and Chaulk Services, Inc.

("Chaulk") will have a full and fair opportunity to present the

question to the Massachusetts courts. In my view, abstention is

required under Younger v. Harris, 401 U.S. 37 (1971). 

-25-

I.

Garmon says that "[w]hen an activity is arguably 

subject to 7 or 8 of the [NLRA], the States as well as the

federal courts must defer to the exclusive competence of the

National Labor Relations Board ["NLRB"] if the danger of state

interference with national policy is to be averted." Garmon, 359 

U.S. at 245.6 Garmon also says that this principle is not 

absolute. There is no need to defer to the NLRB where the

conduct at issue is of "peripheral concern" to federal labor

policy or where the state regulated activities touch "interests .

. . deeply rooted in local feeling and responsibility." Id. at 

243-44.

The Massachusetts anti-discrimination statute touches

"interests so deeply rooted in local feeling and responsibility

that, in the absence of compelling congressional direction,

[courts cannot] infer that Congress [has] deprived the States of

the power to act." Garmon, 359 U.S. at 244. This is so whether 

or not invidious discrimination in employment can be described as

being of "peripheral concern" to the NLRA. Cf. Massachusetts 

Electric Co. v. Massachusetts Commission Against Discrimination, 

375 Mass. 160, 174 (1978) (employment discrimination of

peripheral concern to the NLRA); Walker Mfg. Co. v. Industrial 

Commission, 27 Wis.2d 669, 681 (1965) (age discrimination of 

peripheral concern to Labor Management Relations Act).
 

6 Sex discrimination is not specifically addressed in the NLRA
and so it is not "clearly prohibited" by 8 or "clearly
protected" by 7 of the NLRA.

-26-

Originally enacted in 1946, the Massachusetts anti-discrimination

statute, Mass. Gen. L. ch. 151B, 1-10 (1994), is eighteen

years older than Title VII. See 1946 Mass. Acts 368. It 

regulates conduct in employment in order to carry out the

Commonwealth's interest in ensuring that its workplaces are free

from particular categories of discrimination. It represents no

less an exercise of Massachusetts' police power than building

codes or fire regulations. The interests it protects are at

least as weighty as the interests sought to be vindicated in

actions the Supreme Court has specifically held not preempted by

Garmon. See Belknap, Inc. v. Hale, 463 U.S. 491 (1983) (breach 

of contract and misrepresentation actions by replacement

workers); Farmer v. United Brotherhood of Carpenters and Joiners 

of America, Local 25, 430 U.S. 290 (1977) (infliction of 

emotional distress); Linn v. United Plant Guard Workers of 

America, Local 114, 383 U.S. 53 (1966) (libel). 

That chapter 151B touches interests deeply rooted in

local feeling and responsibility is not disputed. Rather, the

majority asserts that Doulamis' claim is not really a sex

discrimination claim, describing Doulamis' claim as the product

of "artful[] pleading." With deference, I believe the record

establishes that Doulamis' claim is clearly one for sex

discrimination and has been treated as such by the MCAD.7
 

7 Doulamis' claim cannot be preempted simply because the case
arises from a labor dispute. The Supreme Court has squarely held
that Garmon preemption does not turn on whether a claim arises in 
the context of a labor dispute. Linn, 383 U.S. at 63 ("Nor 
should the fact that defamation arises during a labor dispute

-27-

On the facts as alleged, Doulamis has stated a claim

before the MCAD for sex discrimination under chapter 151B. She

asserts, inter alia: 

On November 10, 1993, I was harassed
about my union activity. I believe the
reason is because I am a female. The
males who are also involved are not being
harassed. Therefore, I charge Respondent
with unlawful discrimination against me,
in violation of M.G.L. Chapter 151B . . .
and Title VII . . . .

I believe that I am being single[d] out
by the Respondent because I am a female.
There are numerous other male union
organizers who are not being harassed.

That Doulamis asserts a bona fide sex discrimination

claim is buttressed by the underlying papers in the pleadings

submitted by Chaulk to the district court. Doulamis was

apparently a well-respected employee and was featured in Chaulk's

publicity materials. From the time she began working at Chaulk

in 1990 until the autumn of 1993, Doulamis received no written

warnings and no patient complaints. In the middle of 1993, the

International Association of EMTs and Paramedics began a union

organizing campaign at Chaulk. Although not initially involved,

Doulamis became involved in the campaign during the fall of 1993,

when she and Eric Burgess, a male Chaulk employee, wrote a letter

to the president of Chaulk's parent company calling for

organization of a union. On November 10, 1993, Doulamis was

called from a training session to meet with the CEO of Chaulk,

 

give the Board exclusive jurisdiction to remedy its
consequences."). 

-28-

Nicholas O'Neil, and a vice president, Joseph Gilmore. The two

men told Doulamis at that meeting that she was "pretty" and that

they believed that the other employees at Chaulk would listen to

her because she was "pretty." They asked her to become a non-

union advocate, saying that her physical appearance would

persuade other employees to vote against the union. She refused.

Shortly thereafter, Doulamis began receiving a series of

harassing warnings from Chaulk management about her conduct on

the job and her union activities. Burgess, who had co-authored

the pro-union letter with Doulamis, did not receive such

harassment.

Doulamis believed that she was being singled out for

punishment for her union activities because of her sex. The 

heart of her complaint before the MCAD was that she was being

harassed for her union activities while male union organizers --

including one who had co-authored the letter precipitating the

harassment -- were not (or at least were not until after Doulamis

filed her complaint with the MCAD). This allegation states a

prima facie claim of sex discrimination under chapter 151B. See 

Ramsdell v. Western Massachusetts Bus Lines, Inc., 415 Mass. 673, 

679 (1993); see also Blare v. Husky Injection Molding Sys. 

Boston, Inc., 419 Mass. 437 (1995).  

Under the facts of this case Doulamis could allege two

distinct wrongs -- a claim for unfair labor practices and a claim

for sex discrimination. Characterizing Doulamis' latter claim as

artful pleading assumes away the difficult legal question raised

-29-

by Doulamis' case and squarely presented in the briefs: whether

a sex discrimination claim based on state law is preempted if it

arises out of a course of events that also may give rise to an

unfair labor practice charge.

The Supreme Court in Sears, Roebuck & Co. v. San Diego 

County District Council of Carpenters, 436 U.S. 180 (1978), held 

that even if a case may come within the scope of the Garmon 

preemption doctrine when applied in a "mechanical fashion," id. 

at 188, there is still no preemption over conduct arguably

prohibited by the NLRA unless the controversy before the state

court is identical to the dispute that could have been presented 

under the NLRB. Id. at 197.8 Doulamis' MCAD claim is not 
 

8 At issue in Sears was conduct that could be analyzed in two 
distinct ways. The conduct was both "arguably protected" and
"arguably prohibited" by the NLRA. The Court drew a distinction
between those two categories of conduct (although in that case,
the same conduct happened to qualify as both) and imposed two
distinct lines of analysis. If the activity at issue is
"arguably protected," a finding of preemption is required where
an aggrieved party has a reasonable opportunity of invoking the
NLRB jurisdiction or of inducing his adversary to do so. Id. at 
207. If an activity is "arguably prohibited," state jurisdiction
is preempted only if the issues presented to the state court are
identical to those that could be presented to the NLRB. The
latter rubric leaves much more room for state regulation. Id. at 
200. Since sex discrimination is clearly not protected by the
NLRA, the conduct at issue in this case falls under the more
generous "arguably prohibited" rubric.

The majority appears to apply to this case criteria that Sears 
made applicable to "arguably protected" conduct. For example, in
determining that the controversy here is identical to that which
could have been put to the NLRB the majority says, "[p]lainly
this is not a case where the NLRB declined to exercise its lawful
jurisdiction over a labor controversy, or where the NLRB's actual
exercise of jurisdiction remains a matter of speculation."
Majority Op. at typescript 12; see also Majority Op. at 
typescript 10 n.4. While this consideration is important to
cases involving "arguably protected" conduct, it is not to

-30-

identical to that which could have been heard by the NLRB.

To make out her claim on her chapter 151B action

Doulamis needs to show (1) a prima facie case of discrimination

and (2) "either that the employer's articulated reasons are a

pretext or by direct evidence that the actual motivation was

discrimination." Blare, 419 Mass. at 444. The action before the 

NLRB could not have turned on such an inquiry. Further, the

terms of the employer's settlement agreement with the NLRB do not

establish that Doulamis' claim before the MCAD is not a bona fide

sex discrimination claim.9

On the alleged facts of this case -- where Doulamis and

Burgess were engaged in the same activity (co-authoring the

letter) -- the MCAD will not have to decide as a matter of law

whether one of the two was engaged in union activity, while the

other was not. In other words, insofar as Doulamis and Burgess

were doing the same thing (yet only one was harassed), the

 

"arguably prohibited" conduct.

9 There also seems to be an absence of record support for either
the proposition that the sex discrimination action was addressed
before the NLRB or the proposition that the settlement is
"comprehensive." The settlement agreement, dated March 22, 1995,
does not refer to alleged sex discrimination. Also, according to
its terms, the agreement applies "only [to] the allegations in
the above captioned cases and does not constitute a settlement of
any other cases or matters." The "above captioned cases" are
docket numbers "1-CA-31196, 31945(2), 32267, 32378, 32504, 32534,
32645, 32661." Only one of those docket numbers, 1-CA-31196,
filed December 9, 1993, involves Doulamis. Apparently not
included in the settlement are the other two claims that were,
according to Chaulk, made by Doulamis: docket numbers 1-CA-
31157, filed November 29, 1993, and 1-CA-31181-2, filed December
6, 1993.

-31-

question of whether the activities were protected union

activities cancels out of the equation.

This is why the MCAD, when presented with Chaulk's

claim of preemption, said:

In the Complainant's presentation of
her discrimination case before this
Commission, the 'merits' of the
underlying labor dispute need not be
resolved. It is not necessary for this
Commission to find that the Respondent
did, in fact, interfere with the
Complainant's efforts to organize union
activities; nor is it necessary for a
determination to be made regarding the
Respondent's anti-union animus, if one
should exist. Rather, the Complainant
must show that she was treated
dissimilarly by the Respondent, and that
the impetus for that dissimilar treatment
was due to her gender. It is neither the
role nor the goal of this Commission to
assess the catalyst of the Respondent's
actions. It is, however, this
Commission's purpose to ensure that such
actions are not gender motivated.

In the present case, the Commission may
decide the issue in dispute without
making a threshold determination of
whether the employer had interfered with
the employee's union activities. It need
only determine whether the treatment the
Complainant received, rightly or wrongly,
was different from that of her male
counterparts and motivated by her gender.

It is in this context that the MCAD's interrogatory

must be understood. While it is true that the MCAD has asked

Chaulk questions relating to union organizing activities (and has

perhaps shown insufficient sensitivity to the possible

jurisdictional problem), it has done so for the purpose of

determining factually whether Doulamis was treated differently

-32-

than men for doing the same thing, and not to define legally what

is or is not a union activity under the NLRA. As the MCAD has

recognized, Doulamis' sex discrimination claim exists

independently of any labor law claim. Chaulk's conduct was not

wrongful only by virtue of, or with reference to, the labor laws.

Cf. Tamburello v. Comm-Tract Corporation, No. 95-1295, slip op. 

at 10-11 (1st Cir. October 2, 1995) (RICO claim preempted under

Garmon where reviewing court would be forced to decide whether 

some portion of defendant's conduct violated federal labor laws

to determine whether the plaintiff had established a RICO

predicate act).10

The Sears inquiry suggests that the MCAD claim does not 

fall within the scope of Garmon preemption. There is, however, 

an even more compelling consideration that yields the same

conclusion. Of paramount importance in any preemption inquiry,

including one under Garmon, is congressional intent. See 

Metropolitan Life Ins. Co. v. Massachusetts, 471 U.S. 724, 747 

 

10 Significantly, particularly with respect to the Younger 
issues raised in Part II, any issue concerning whether Doulamis
was or was not engaged in union activity will arise in this case,
if at all, by way of Chaulk's potential defense to the action --
that Doulamis was treated differently than Burgess and other male
organizers because the male organizers were engaged in protected
union activity, while Doulamis was not. The Supreme Court has
said in the analogous context of 301 preemption under the Labor
Management Relations Act that a defense of preemption is not even
a sufficient basis for removal of the action to federal court.
See Caterpillar Inc. v. Williams, 482 U.S. 386, 399 (1987) ("[A] 
defendant cannot, merely by injecting a federal question into an 
action that asserts what is plainly a state-law claim, transform
the action into one arising under federal law, thereby selecting
the forum in which the claim shall be litigated.") (emphasis in
original).

-33-

(1985) (stating, in discussing NLRA preemption, including Garmon 

preemption, that "as in any preemption analysis, [t]he purpose of

Congress is the ultimate touchstone") (internal quotations

omitted). If Congress has clearly evidenced its intent one way

or the other on the question of whether states may regulate an

area of conduct, federal courts must follow it. Congress has

clearly evidenced its belief that state anti-discrimination

statutes do not unduly interfere with federal labor policy.

Doulamis' claims not only come under chapter 151B but

also come within the scope of Title VII, 42 U.S.C.A. 2000e to

e-17 (West 1994 & Supp. 1995), and are within the jurisdiction of

the Equal Employment Opportunity Commission ("EEOC"). She has in

fact alleged a violation of Title VII and has indicated in her

MCAD complaint that she wishes to have her charges filed with the

EEOC.

The Supreme Court has said that the NLRA and Title VII

provide concurrent remedies. See Alexander v. Gardner-Denver 

Co., 415 U.S. 36, 47-48 (1974); see also Beverly v. Lone Star 

Lead Construction Corp., 437 F.2d 1136, 1140 n.22 (5th Cir. 

1971); cf. Britt v. Grocers Supply Co., Inc., 978 F.2d 1441, 

1447 (5th Cir. 1992) ("[W]e have held that claims under Title VII

are not preempted by the NLRA. [Our] cases hold that a remedy is

available under both the NLRA and Title VII and recognize

concurrent jurisdiction between Title VII and the NLRA."

(footnote omitted)), cert. denied, 113 S. Ct. 2929 (1993); Morgan 

v. Massachusetts General Hosp., 901 F.2d 186, 194 (1st Cir. 1990) 

-34-

("Clearly, if an employee has engaged in expression against

employer policies, even within the context of union activities,

which violate the Civil Rights Act, such as discriminatory

treatment of minorities or sexual harassment, and the employee

alleges discharge for that expression, section 704(a) [of the

Civil Rights Act] would be implicated for the narrow expression-

related claims.").11

Thus, even accepting the majority's view that the

factual basis for the sex discrimination claim provides the same

basis for the unfair employment practice claim and that the sex

discrimination claim is identical to that before the NLRB,

Doulamis is still entitled to pursue her claim under Title VII

before the EEOC. See Alexander, 415 U.S. at 47-48. Since the 

conduct prohibited by Title VII is nearly the same as that

proscribed by chapter 151B and Congress intended Title VII to

provide a concurrent remedy to the NLRA in areas of overlap, it

would be difficult to impute to Congress any hostility to the

enforcement of chapter 151B with respect to areas of potential

overlap with the NLRA.

There is, however, no need to rely on such a general

proposition in this case because Congress has affirmatively

stated in the language and through the structure of Title VII

itself that state anti-discrimination laws may provide a remedy

that overlaps with the NLRA. Not only did Congress affirmatively
 

11 It is clear also that jurisdiction is concurrent between the
EEOC and NLRB over claims that may fall within each statute. See 
Beverly, 437 F.2d at 1140, n.22. 

-35-

preserve the operation of state anti-discrimination laws in Title

VII, see 42 U.S.C.A. 2000e-7, but it made the state anti- 

discrimination statutes an integral component of the Title VII

enforcement structure. See 42 U.S.C.A. 2000e-5(c) ("section 

706(c)"). Section 706(c) of Title VII explicitly provides that

in states like Massachusetts (which have anti-discrimination

statutes and an agency charged with enforcing the state statute)

jurisdiction in the state administrative agency is exclusive for 

the first 60 days after a claim is filed. See 42 U.S.C.A.  

2000e-5(c).

The importance of state anti-discrimination statutes in

the enforcement scheme of Title VII was of major concern to

Congress in enacting Title VII. Isaac v. Harvard University, 769 

F.2d 817, 822 (1st Cir. 1985) ("The issue reflected in section

706(c), the relationship between federal and state remedies for

employment discrimination, received much attention throughout the

legislative process."). The legislative history shows that

section 706(c) of Title VII was enacted "'to keep primary,

exclusive jurisdiction in the hands of the State commissions for

a sufficient period of time to let them work out their own

problems at the local level.'" Id. (quoting 110 Cong. Rec. 13087 

(1964) (comments of Senator Dirksen)).12 It was critical to
 

12 The EEOC has recognized the importance of allowing state
anti-discrimination statutes to operate in order to effectuate
Congress' purposes for Title VII. See, e.g., 29 C.F.R. 
1601.13(a)(3)(i) (1995) ("In order to give full weight to the
policy of section 706(c) of title VII, which affords State and
local fair employment practice ["FEP"] agencies that come within
the provisions of that section an opportunity to remedy alleged

-36-

the passage of Title VII that the federal government initially

defer to the states in matters involving discrimination.

Moreover, Congress did not devise this enforcement structure

simply for administrative convenience (i.e., to avoid duplication

of effort). As this court has previously said, section 706(c)

"was first, and foremost, a statute of deference." Isaac, 769 

F.2d at 824; see also id. at 824 n.9 (citing Oscar Mayer & Co. v. 

Evans, 441 U.S. 750 (1979) and stating that "[t]he Court's 

implicit message appears to be that deference, and not

duplication, was at the heart of section 706(c)").13 And

Congress clearly had the NLRA in mind when it mandated this

principle of deference to the state anti-discrimination statutes.

See Alexander, 415 U.S. at 48 n.9 (quoting 110 Cong. Rec. 7207 

(1964) (where Senator Joseph Clark, one of the sponsors of the

bill, introduced an interpretive memorandum specifically

mentioning the relationship between Title VII and the NLRA)).

If Congress believed that state anti-discrimination

statutes could not regulate coextensively with Title VII, then

perhaps preemption would be appropriate. But that is not the

case. Nothing in Title VII says that state anti-discrimination
 

discrimination concurrently regulated by title VII or the ADA and
State or local law, the Commission adopts the following
procedures with respect to allegations of discrimination filed
with the Commission.").

13 Under the EEOC's regulations the MCAD is not only a
designated FEP agency, see 29 C.F.R. 1601.74 (1995), but it is 
a certified designated FEP agency, see 1601.80 (1995), to which 
the EEOC gives a higher level of deference than it otherwise does
to designated FEPs. See 29 C.F.R. 1601.75(a) (1995). 

-37-

statutes cannot apply coextensively with Title VII. More

significantly, there clearly is nothing that says that the

exclusive jurisdiction of state administrative agencies under

section 706(c) is limited to cases under Title VII that do not

overlap with the NLRA. 

It is possible to draw at least two conclusions

relevant to congressional intent from Title VII. First, Congress

affirmatively intended that state anti-discrimination statutes

would operate to regulate conduct covered by Title VII to the

same extent as Title VII itself and, thus, in areas that might

also be covered by the NLRA. Second, Congress could not have

intended to eliminate the operation of state anti-discrimination

statutes over claims covered by Title VII because that would

actively impair the operation of Title VII and frustrate the 

enforcement scheme Congress envisioned. Not even ERISA

preemption, which is arguably much broader than Garmon 

preemption, see Metropolitan Life Ins. Co. v. Massachusetts, 471 

U.S. 724, 747 (1985) (distinguishing ERISA preemption from NLRA

preemption by stating that ERISA preemption is statutorily

mandated), allows preemption where it would impair the operation

of Title VII. See Shaw v. Delta Airlines, Inc., 463 U.S. 85, 102 

(1983) (where ERISA preemption of a state anti-discrimination

statute would impair the operation of Title VII, there is no

preemption). The reasonable conclusion is that Congress intended

to allow state anti-discrimination statutes to overlap with the

NLRA.

-38-

The Supreme Court's decision in Alexander v. Gardner- 

Denver Co., 415 U.S. 36 (1974), reinforces this conclusion. In 

Alexander the Court was called upon to determine the relationship 

between the federal courts and the grievance-arbitration

machinery of collective bargaining agreements in the resolution

and enforcement of an individual's rights under Title VII. There

an employee had a claim for discrimination that was clearly

covered by a collective bargaining agreement.14 At issue was

whether the employee's remedies provided in the collective

bargaining agreement (and subject to arbitration) precluded a

suit in federal court based on Title VII.15 The Court

unanimously held that it did not, saying:

[L]egislative enactments in this area
have long evinced a general intent to
accord parallel or overlapping remedies
against discrimination. In the Civil
Rights Act of 1964, 42 U.S.C. 2000a et 
seq., Congress indicated that it 
considered the policy against
discrimination to be of the "highest
priority." Newman v. Piggie Park 
Enterprises, [390 U.S. 400, 402 (1968)]. 
Consistent with this view, Title VII
provides for consideration of employment-
discrimination claims in several forums.
See 42 U.S.C. 2000e-5(b) (1970 ed., 
Supp. II) (EEOC); 42 U.S.C. 2000e-5(c)
(1970 ed., Supp. II) (state and local 
agencies); 42 U.S.C. 2000e-5(f) (1970 
ed., Supp. II) (federal courts). And, in
general, submission of a claim to one
 

14 The right to bargain collectively is, of course, an NLRA
conferred right. Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 
213 n.8 (1985).

15 In Alexander, as here, there had been no waiver of statutory 
rights. See Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 
20, 35 (1991).

-39-

forum does not preclude a later
submission to another. Moreover, the
legislative history of Title VII
manifests a congressional intent to allow
an individual to pursue independently his
rights under both Title VII and other 
applicable state and federal statutes. 

Alexander, 415 U.S. at 47-48 (emphasis supplied; footnotes 

omitted);16 see also Brown v. Hotel and Restaurant Employees 

and Bartenders Intern. Union, Local 54, 468 U.S. 491 (1984).17 
 

16 The Court has applied a similar analysis in analogous
situations. See Lingle v. Norge Division of Magic Chef, Inc., 
486 U.S. 399, 412 (1988) (suggesting that " 301 does not preempt
state anti-discrimination laws, even though a suit under these
laws, like a suit alleging retaliatory discharge, requires a
state court to determine whether just cause existed to justify
the discharge." (citation omitted)); Colorado Anti-Discrimination 
Commission v. Continental Air Lines, Inc., 372 U.S. 714, 724 
(1963) (rejecting a claim that a state anti-discrimination law
was preempted by the Railway Labor Act, which is similar to the
National Labor Relations Act).

17 At issue in Brown was whether 86 and 93 of the New Jersey 
Casino Control Act (which set qualifications for union officials)
were preempted by 7 of the NLRA. It was argued that the New
Jersey statute was preempted because it interfered with the right
protected under 7 of employees to choose their union officials.
The Supreme Court held that 7 did not completely preempt 86
and 93 of the New Jersey statute. In the Court's view, Congress
had, through the passage of the Labor-Management Reporting and
Disclosure Act ("LMRDA"), disclaimed any intent to pre-empt all
state regulation which touched upon the specific right of
employees to decide which individuals will serve as officials of
their bargaining representatives. The LMRDA had imposed, in 
504(a), federal qualification standards for union
representatives. Because the LMRDA affirmatively preserved the
operation of state laws in 603 and made 504(a) itself
dependent in part on state laws for its enforcement, the Court
held that state laws could impose their own similar qualification
standards on union officials. Id. at 509. 

Brown is highly instructive on the type of approach required 
for this case. In Brown, the Court focussed on the indicia of 
congressional intent that could be found not just in the NLRA,
but also in a parallel federal statute. The parallel federal
statute there specifically reserved a place for state regulation
over the conduct coming within its scope. While the LMRDA does

-40-

National labor relations policy does not begin and end

with the NLRA. Title VII is as much a part of the network of

labor relations law as is the NLRA. Where Congress has so

clearly indicated that state anti-discrimination laws are to

operate hand in hand with Title VII (indeed, for a limited period

to the exclusion of Title VII) it is difficult to conclude

Congress intended preemption under the circumstances here. In

the words of Garmon, preemption should not be found absent 

"compelling congressional direction." Garmon, 359 U.S. at 244. 

Here, all the congressional direction is to the effect that state

anti-discrimination statutes may supplement federal laws,

including federal labor laws, and Garmon preemption is therefore 

inappropriate.

II.

Having stated my disagreement with the view that

Doulamis' sex discrimination claim is preempted by the NLRA, I

consider what perhaps may be a conceptually prior issue, the

issue of abstention. By seeking an injunction against the state

proceedings, Chaulk has effectively asked the federal court to

enjoin the state courts from deciding the Garmon issue. Thus, 

the potentially dispositive question, apart from whether Garmon 

preemption is appropriate, is whether this federal court should
 

not bear on this case, Title VII does, and Title VII makes clear
that Congress intended federal and state regulation of
discrimination to overlap. The differences between Brown and 
this case do not affect the central instruction of Brown: that a 
federal court must defer to congressional intent in making any
preemption analysis, even one involving the NLRA and even if it
is expressed in another federal statute.

-41-

bar the state fair employment agency from hearing this claim and

so bar Massachusetts state courts from deciding the Garmon issue 

themselves, or, to the contrary, abstain from decision and allow

the state agency and courts to proceed. As with the preemption

issue, this issue is difficult, but on balance I would hold here

under Younger v. Harris, 401 U.S. 37 (1971), and its progeny, 

that abstention is appropriate.

Younger prevents interference with pending state 

administrative proceedings if they are of a judicial nature,

implicate an important state interest, and provide the federal

plaintiff an adequate opportunity to litigate his constitutional

claim. Ohio Civil Rights Commission v. Dayton Christian Schools, 

Inc., 477 U.S. 619, 627 (1985). Although Chaulk claims that 

Younger abstention is a principle of "discretionary deference," 

the Supreme Court has stated that where a case falls within the

Younger parameters, a district court has no discretion to provide 

injunctive relief and must abstain. See Colorado River Water 

Conservation District v. United States, 424 U.S. 800, 816 n.22 

(1976) ("Where a case is properly within [the Younger] category 

of cases, there is no discretion to grant injunctive relief.");

see also Sun Refining & Marketing Co. v. Brennan, 921 F.2d 635, 

639 (6th Cir. 1990) ("[U]nlike other forms of abstention, when a

case is properly within the Younger category of cases, there is 

no discretion on the part of the federal court to grant

injunctive relief."); Seneca-Cayuga Tribe v. State ex rel. 

Thompson, 874 F.2d 709, 711 (10th Cir. 1989) (Younger abstention 

-42-

not discretionary once conditions are met, absent extraordinary

circumstances that render a state court unable to give litigants

a full and fair hearing on their federal claims).18

There is no question that the MCAD proceedings were

ongoing at the time Chaulk's district court complaint was filed,

see Bettencourt v. Board of Registration in Medicine, 904 F.2d 

772, 777 (1st Cir. 1990) (in determining interference "the proper

point of reference is the date plaintiff filed his federal

complaint"), and that the proceedings are judicial in nature.

See Dayton Christian Schools, 477 U.S. at 629 (finding Ohio Civil 

Rights Commission proceedings sufficiently judicial in nature).

The significant questions here are whether the state interest in

deciding sex discrimination claims is important and whether there

will be an adequate opportunity for Chaulk to raise the Garmon 

preemption question in the Massachusetts state forum.

The Supreme Court has said that remedying sex

discrimination is a sufficiently important state interest to

trigger Younger. See Dayton Christian Schools, 477 U.S. at 628 

("We have no doubt that the elimination of prohibited sex

discrimination is a sufficiently important state interest to

bring the present case within the ambit of [Younger and its 

progeny]."). Although Chaulk has suggested that there can be no

significant state interest in this case because it is preempted,
 

18 The majority quarrels with this proposition stating that the
Colorado River case was discussing criminal cases. Colorado 
River, however, was discussing Younger abstention and Younger 
clearly applies to non-criminal state administrative proceedings.
See Dayton Christian Schools, 477 U.S. at 627 & n.2.  

-43-

such an argument, I believe, is most likely foreclosed by New 

Orleans Public Service, Inc. v. Council of City of New Orleans, 

491 U.S. 350, 365 (1989) ("NOPSI"). In NOPSI the Court said that 

in determining the importance of the state interest courts should

"not look narrowly to its interest in the outcome of the

particular case -- which could arguably be offset by a

substantial federal interest in the opposite outcome." Id. 

Courts rather must look to the "importance of the generic

proceedings to the State." Id. (citing Dayton Christian 

Schools). As Dayton Christian Schools made explicit, 

Massachusetts has a legitimate and important state interest in

preventing sex discrimination. Thus the important state interest

prong of Younger is satisfied in this case. 

Where there is an important state interest, the Supreme

Court has noted that a federal court should abstain unless state

law clearly bars the interposition of the federal plaintiff's

constitutional claim. Middlesex County Ethics Committee v. 

Garden State Bar Ass'n, 457 U.S. 423, 432 (1982). Here, we have 

no reason to doubt that the Massachusetts state courts will

provide Chaulk with a full and fair opportunity to raise the

Garmon preemption question. Chaulk raised the preemption 

argument before the MCAD and will have a further opportunity to

pursue it before the Massachusetts appellate courts. Dayton 

Christian Schools, 477 U.S. at 629 ("[I]t is sufficient . . . 

that constitutional claims may be raised in state-court judicial

review of the administrative proceeding.") (citation omitted).

-44-

If federal law barred the Massachusetts state courts

from deciding the Garmon preemption question, then the "adequate 

opportunity" prong would not be met. Indeed such a proposition

appears to be at the heart of Chaulk's argument. Chaulk argues:

"[W]here conduct is arguably protected or prohibited by the NLRA,

jurisdiction over that conduct is preempted in the labor context

and is exclusively federal. The determination of whether the 

case arguably falls within the preempted field is also to be made 

by the federal courts, not State courts or State tribunals" 

(emphasis supplied).

But that proposition is untenable and inconsistent with

the Supreme Court's case law. Although state courts may be

deprived of jurisdiction to decide a case once it is preempted 

under Garmon, they are not deprived of jurisdiction to decide 

whether a case is so preempted. State courts have concurrent 

jurisdiction to decide federal preemption issues. See Chick Kam 

Choo v. Exxon Corp., 486 U.S. 140, 149-50 (1988) ("[W]hen a state 

proceeding presents a federal issue, even a pre-emption issue,

the proper course is to seek resolution of that issue by the

state court."); see also Turnbow v. Pacific Mut. Life Ins. Co., 

934 F.2d 1100, 1103 (9th Cir. 1991) (no jurisdictional bar to

state court deciding ERISA preemption question); Sun Refining & 

Marketing Co. v. Brennan, 921 F.2d 635, 641 (6th Cir. 1990) 

(discussing possibility of Younger abstention question in 

situation involving state action that was arguably subject to the

exclusive jurisdiction of Occupational Safety and Health

-45-

Administration ("OSHA") and stating, "it is undisputed that

concurrent jurisdiction exists in the Ohio state courts to decide

the federal pre-emption issue").

Garmon preemption is no exception to this principle. 

Cf. International Longshoremen's Ass'n, AFL-CIO v. Davis, 476 

U.S. 380, 393 (1985) ("when a claim of Garmon preemption is 

raised [in state court], it must be considered and resolved by 

the state court" (emphasis supplied)). Because the Massachusetts 

state courts have concurrent jurisdiction to decide the Garmon 

preemption issue, Chaulk will have an adequate opportunity to

raise its Garmon preemption claim in the Massachusetts courts, 

and thus the "adequate opportunity" prong of Younger is also met 

here.

Perhaps recognizing that Younger applies to this case, 

Chaulk has argued that preemption cases should be treated

differently than typical Younger abstention cases. It says that 

"[t]he real issue in this case is whether a doctrine of comity

should be applied in a Garmon preemption case." It argues that 

treating this case under Younger "confuses two federal concepts 

which are rooted in very different soil"; and that while Younger 

"is predicated upon discretionary deference by the federal

government to fundamental State interests," preemption "is

mandatory and arises under the Constitution, specifically, the

Supremacy Clause." According to Chaulk "[t]o elevate the

equitable doctrine of abstention over the Constitutional doctrine

of preemption would truly be to elevate form over substance."

-46-

Whatever the merits of Chaulk's argument in theory, the

Supreme Court has apparently rejected it. In NOPSI the Court 

said that preemption issues do not involve a greater federal

interest than other constitutional challenges:

There is no greater federal interest in
enforcing the supremacy of federal
statutes than in enforcing the supremacy
of explicit constitutional guarantees,
and constitutional challenges to state
action, no less than pre-emption-based
challenges, call into question the
legitimacy of the State's interest in its
proceedings reviewing or enforcing that
action. Yet it is clear that the mere
assertion of a substantial constitutional
challenge to state action will not alone
compel the exercise of federal
jurisdiction. . . . [P]reemption-based
challenges merit a similar focus . . . .

Id. at 365. Thus, courts are to analyze Younger abstention cases 

involving preemption claims no differently than any other Younger 

abstention case, see Sun Refining, 921 F.2d at 639, and even a 

substantial claim of federal preemption is not sufficient to

overcome Younger. See NOPSI, 491 U.S. at 365-66.19 
 

19 A distinction exists between preemption involving a choice of
forum and preemption involving a choice of law. Cf. Violette v. 
Smith & Nephew Dyonics, Inc., 62 F.3d 8, 11 (1st Cir. 1995) 
(choice of forum preemption is jurisdictional and cannot be
waived, while choice of law is not and may be waived). The
argument might be made that because Garmon involves choice of 
forum preemption there is a greater federal interest to protect
than in a case involving choice of law and that, accordingly,
abstention here might not be appropriate here even if abstention
for choice of law preemption would be. NOPSI, however, says that 
the federal interest is not to be weighed against the state
interest. See Sun Refining, 921 F.2d at 641. Thus even if the 
federal interest in Garmon preemption is weightier than in choice 
of law preemption cases, that consideration does not affect the
Younger inquiry; abstention is appropriate as long as an 
important state interest is identified and the other requirements
are met. See Middlesex County, 457 U.S. at 431-32; Sun 

-47-

The exception to Younger that provides that abstention 

may be improper where the plaintiff might suffer irreparable

injury absent equitable relief is not applicable here. A

sufficient risk of irreparable injury may exist where the

challenged state statute is "flagrantly and patently violative of

express constitutional prohibitions. . . ." Younger, 401 U.S. at 

53-54. But chapter 151B is hardly flagrantly unconstitutional

and, given the complexities of the preemption question, it is

difficult to describe the MCAD's actions as flagrantly or

patently violative of the Garmon preemption principle. 

Further, although the Supreme Court in NOPSI left open 

the question of whether a "facially conclusive" claim for

preemption might fall within the exception to Younger, see NOPSI, 

491 U.S. at 367, the preemption claim here is not facially

conclusive. For Chaulk's preemption claim to be facially

conclusive the federal courts must be able to determine the state

action is preempted "without further factual inquiry." Id. 

Chaulk cannot meet this standard.

The MCAD has not sought directly to regulate unfair

labor practices nor has it questioned the authority of the NLRB

to adjudicate the unfair labor practices claim. Cf. NOPSI, 491 

U.S. at 367. It has in fact said that "the issue of union

interference is properly left to the provinces of the NLRB."

Neither has it challenged the non-admission settlement agreement

that Chaulk has entered, nor does it appear that the MCAD action
 

Refining, 921 F.2d at 641.  

-48-

will undermine that agreement.20 Even if there were reason to

doubt whether Doulamis has a bona fide claim for sex

discrimination or whether the MCAD should adjudicate the dispute,

it would be impossible "conclusively [to] say [the MCAD] is wrong

without further factual inquiry -- and what requires further

factual inquiry can hardly be deemed 'flagrantly' unlawful for

purposes of a threshold abstention determination." NOPSI, 491 

U.S. at 367.21 

Finally, the fact that the union filed a complaint with

the NLRB before Doulamis filed her complaint before the MCAD does

not resolve the matter.22 To begin with, Chaulk never raised

 

20 There is nothing in the record to show that the NLRB even
considered Doulamis' claims for sex discrimination in the context
of the unfair labor practice charges. Moreover, the settlement
agreement itself "does not preclude persons from filing charges,
the General Counsel from prosecuting complaints, or the Board and
the courts from finding violations with respect to matters which 
precede the date of the approval of this Agreement regardless of
whether such matters are known to the General Counsel or are
readily discoverable" (emphasis supplied). 

21 There may be situations in which the preemption claim could
be facially conclusive and abstention would not be appropriate.
For example, this case would be viewed quite differently had
Doulamis alleged before the MCAD that the discrimination Chaulk
engaged in was simply based on her potential affiliation in the
union, as opposed to her gender. In such a case, the question
whether the claim was within the exclusive jurisdiction of the
NLRA would not turn on deciding whether her claim was a case of
artful pleading. No more facts would need be determined and
under such circumstances abstention would probably not be
appropriate. Moreover, were the MCAD to assert jurisdiction
under such circumstances, there would be a good argument that the
MCAD was behaving in flagrant disregard of the Garmon preemption 
principle. 

22 Although Doulamis' complaint before the MCAD was filed on
December 1, 1993 the proceedings before the MCAD began on
November 23, 1993 when Doulamis underwent her intake interview.

-49-

such a theory as a basis to prevent abstention. Its initial

brief, its reply brief, and the supplemental letter memorandum

requested by the panel at oral argument are devoid of any

argument that abstention is inappropriate because the NLRB

proceeding was pending at the time of the MCAD complaint. It is

therefore waived. See Grella v. Salem Five Cent Savings Bank, 42 

F.3d 26, 36 (1st Cir. 1994).

Moreover, there does not appear to be case law squarely

supporting such a theory. Indeed, such a theory of abstention

appears to be at odds with the treatment of the issue in at least

one other circuit. See Sun Refining, 921 F.2d at 639-42 

(abstention was appropriate despite claim that the state law

action violated the exclusive jurisdiction of OSHA and despite

fact that OSHA action had been pending and concluded months

before the state action was brought). As a matter of policy, the

existence of a NLRB action at the time a parallel state

proceeding is filed should not control the matter here. The

NLRB, if it so chose, could have sought an injunction against the

state proceedings if it thought the state proceedings conflicted

with its exclusive jurisdiction. NLRB v. Nash-Finch Co., 404 

U.S. 138, 142-44 (1971).23 The fact that the NLRB did not so
 

23 Even the cases cited for the proposition that a federal court
may enjoin a state court's intrusion into a federal agency's
exclusive jurisdiction do not stand for such a broad proposition.
In the only labor case cited, American Federation of Labor v. 
Watson, 327 U.S. 582 (1946), the court specifically said that for 
such an injunction to issue there must be an immediate threat of
irreparable injury, such as an "imminent threat to an entire
system of collective bargaining." Id. at 595. No comparable 
threat exists here. In fact, in Watson the Court explicitly said 

-50-

move speaks volumes.

I respectfully dissent.

 

that the threat of multiple prosecutions under the state law
would not be sufficient to justify an injunction. See id. The 
Court also abstained under the doctrine of Railroad Commission of 
Texas v. Pullman Co., 312 U.S. 496 (1941). See id. at 599.  

-51-